SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------------X

BIZTANK, INC., IMMEDIATE MARKETING &
BUSINESS CONSULTING, INC. a/k/a IMBC, and
JOEL KLEIN, individually, and as an Officer and
Shareholder of IMMEDIATE MARKETING &
BUSINESS CONSULTING, INC. and BIZTANK, INC.,

                                      Plaintiffs,

      -against-

MEHULOL PUBLICATIONS, LLC d/b/a AMI
MAGAZINE, YITZCHOK FRANKFURTER,
and RECHY FRANKFURTER

                     Defendants.

-------------------------------------------------------------------X

**Index No.:**
**Date Purchased:**

**SUMMONS**

**Plaintiff designates**
**Kings County as**
**Place of Trial**

**Basis of Venue:**
**Plaintiff's Principal Place**
**of Business**

**To the Above-Named Defendant:**

      YOU ARE HERBY SUMMONED to answer the Complaint in this action and to serve a copy of your Answer, or if the Complaint is not served with this Summons, to serve Notice of Appearance, on plaintiff's attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default, for the relief demanded in the Complaint.

Dated: New York, New York
       October 23, 2017

                          Yours, etc.,

                          ALLYN & FORTUNA LLP
                          *Attorneys for Plaintiff*

         By:    Nicholas Fortuna
                   1010 Avenue of the Americas, 3d Flr
                   New York, New York 10018
                   (212) 213-8844

TO:

MEHULOL PUBLICATIONS, LLC d/b/a AMI MAGAZINE
1575 50th Street
Brooklyn, New York 11219

YITZCHOK FRANKFURTER
1733 51st Street
Brooklyn, NY 11204

RECHY FRANKFURTER
1733 51st Street
Brooklyn, NY 11204

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 3 of 48 PageID #: 9 RECEIVED NYSCEF: 10/24/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X
BIZTANK, INC., IMMEDIATE MARKETING &
BUSINESS CONSULTING, INC. a/k/a IMBC, and
JOEL KLEIN, individually, and as an Officer and
Shareholder of IMMEDIATE MARKETING &
BUSINESS CONSULTING, INC. and BIZTANK, INC.,

                        Plaintiffs,

     -against-

MEHULOL PUBLICATIONS, LLC d/b/a AMI
MAGAZINE, YITZCHOK FRANKFURTER,
and RECHY FRANKFURTER

                       Defendants.
-----------------------------------------------------------------X

Index No.:
Date Purchased:

**VERIFIED
COMPLAINT**

Plaintiffs BIZTANK, INC., IMMEDIATE MARKETING & BUSINESS

CONSULTING, INC. and JOEL KLEIN, individually and as an Officer and Shareholder

of IMMEDIATE MARKETING & BUSINESS CONSULTING, INC. and BIZTANK,

INC., ("Plaintiffs"), by and through their attorneys, Allyn & Fortuna LLP, allege as

follows as and for a Verified Complaint against the defendants:

## THE PARTIES

1.     Plaintiff JOEL KLEIN ("Klein") is, and at all times hereinafter mentioned

was, a resident of the County of Kings, State of New York.

2.     Plaintiff BIZTANK, INC. ("BizTank") is, and at all times hereinafter

mentioned was, a domestic business corporation company duly organized under the laws

of the State of New York, incorporated by Klein July 12, 2016, with a principal place of

business located at 219 Havemeyer Street, Brooklyn, New York 11211.

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM
INDEX NO. 520607/2017

NYSCEF DOC. NO. 1    Case 1:17-cv-06869-CBA-SMG    Document 1-1    Filed 11/22/17    Page 4 of 48 PageID #: 10
RECEIVED NYSCEF: 10/24/2017

3.    Plaintiff IMMEDIATE MARKETING & BUSINESS CONSULTING, INC. a/k/a IMBC ("IMBC") is, and at all times hereinafter mentioned was, a domestic business corporation company duly organized under the laws of the State of New York with a principal place of business located at 219 Havemeyer Street, Brooklyn, New York 11211.

4.    Defendant MEHULOL PUBLICATIONS, LLC d/b/a AMI MAGAZINE ("AMI") is, and at all times hereinafter mentioned was, a domestic limited liability company, duly organized under the laws of the State of New York with a principal place of business located at 1575 50th Street, Brooklyn, New York 11219.

5.    Defendant YITZCHOK FRANKFURTER ("YITZCHOK") is, and at all times hereinafter mentioned was, a resident of the County of Kings, State of New York.

6.    Defendant RECHY FRANKFURTER ("RECHY") is, and at all times hereinafter mentioned was, a resident of the County of Kings, State of New York.

7.    Klein is the Founder and CEO of plaintiffs BizTank and IMBC.

8.    Klein is a Certified Professional Business Coach, with over 15 years of experience as a business and marketing coach, specializing in offering such services within the Hasidic Orthodox Jewish Community.

9.    IMBC is a marketing and business consulting firm founded by Klein that offers business owners, senior management, and entrepreneurs with specialized insight and know-how to grow their businesses both within the Hasidic Orthodox Community and in secular markets.

2

10.     Defendant AMI is a Hasidic Orthodox weekly magazine covering a variety of issues affecting the Orthodox community, ranging from current affairs, politics, real estate, and lifestyle issues.

11.     Defendants RECHY and YITZCHOK are husband and wife and founders of AMI.

### STATEMENT OF FACTS
### FACTS COMMON TO ALL CAUSES OF ACTION

12.     As early as 2007, Klein, through his business coaching and marketing company, developed a marketing plan to help some of its clients meet investors and obtain funding for their business ideas that would also serve as a business opportunity for Klein.

13.     The concept was called "Million Dollar Joint Venture" and advertisements ran in several newspapers as part of a service offered by Klein.

14.     Through the years, the multi-faceted marketing plan evolved into Klein soliciting applicants to pitch their business ideas to a select number of investors, who later became known as moguls.  Through this process, the presenters would have the opportunity to receive valuable feedback from business people within the community who have succeeded in their industry and are looking for investment opportunities.

15.     The investors receive the benefit of learning about business opportunities they otherwise would not have had access to, and of having the initial right to invest in the presenter's business at an early stage in exchange for either a percentage of the business or a significant rate of return.

16.     Klein, in turn, would receive from the presenters a fee or an agreed upon percentage of the investment funds they obtained as a result of his efforts.

3

17.     In September 2014, defendant YITZCHOK suggested that Klein propose an idea for a collaboration between Plaintiffs Klein and IMBC and defendant AMI magazine.

18.     Plaintiff submitted a proposal for a separate weekly AMI Business magazine called "AMI Business."

19.     Klein included in the proposal, a magazine section called "Invest in Me", which was derived from the Million Dollar Venture marketing plan, and described his idea for a business platform that facilitated the connection between entrepreneurs with investors.

20.     The proposal also included a mock-up of the magazine layout, described Klein's and IMBC's vision for the magazine and proposed content, and included as part of the content a section entitled "Invest in Me," which was described as "[a] platform for people to pitch their business ideas to the thousands of Jewish investors around the globe. They will be able to get connected via AmiBusiness."

21.     Plaintiffs always intended to keep their ideas and proposal confidential and included a Non-Disclosure Agreement with their proposal for the AMI Business magazine and the "Invest in Me" concept.

22.     Defendants did not accept Plaintiff's proposal for a separate business magazine or the proposed content.

23.     Subsequently, beginning in February 2015, Klein began writing a business coaching column based on the work he did with IMBC that would be published in AMI.

24.     Klein was an unpaid contributor and wrote the articles as a marketing tool intended to benefit his coaching and consulting business. While the email listed on his

4

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM

NYSCEF DOC. NO. 1

articles was parnoosa@amimagazine.org, all emails he received were forwarded to Leah Klein.

25.     AMI benefitted from its relationship with Klein by receiving free high-quality content for its magazine, additional revenue from new advertising and increased subscriptions, and developed credibility as a business magazine, all due to Klein's reputation as the only Orthodox Jewish Certified Business Coach in the New York area.

26.     Klein's articles focused on providing business advice and insight to AMI readers seeking to start a business or grow an existing business.

27.     Beginning in 2013, Klein began developing his "Invest in Me" concept by identifying and establishing a network of investors within the Orthodox Community who were looking for investment opportunities and were open to hearing new business ideas.

28.     Klein expended great efforts to secure his network of investors.  Such efforts included investing in business trade shows and networking events, developing the "Business Indicator," a comprehensive analytical tool for business owners to determine whether they are at a stage to reinvest in other businesses for which Klein received the Parnassah Expo Most Innovative Business Award, as well as a simplified version of the tool called Business Maturity Index tool available on IMBC's website.  As a result of these efforts, Plaintiff Klein developed a network of at least 20 investors.

29.     Klein also began identifying entrepreneurs with novel business ideas, likely to garner interest from one or more of his network of investors.

30.     One such entrepreneur was named Eli Schwartz, a client of IMBC, who had developed a business plan for providing schools and the public with ready to use packages of baking ingredients. Plaintiff wrote about Mr. Schwartz's business presentations to three

Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 8 of 48 PageID #: 14

possible investors, and the offers made by the investors to Mr. Schwartz in his coaching column for Ami magazine.

31.     As a result of the column, Plaintiff Klein received a lot of positive feedback and word spread throughout the Orthodox community that as part of his IMBC business services, plaintiff Klein could connect entrepreneurs to businesses seeking financing. Numerous new clients approached Klein and IMBC seeking their assistance in finding investors.

32.     Believing that a column describing the business process implemented by Plaintiffs in connecting business investors and entrepreneurs would be interesting to the readers of Klein's column in AMI magazine, Mrs. Klein, at her husband's request, reached out to defendant RECHY in February 2016, to inform her of a new feature that Klein wanted to add to his AMI column.

33.     The new column would describe Klein's business platform process of introducing investors to entrepreneurs seeking to pitch their business ideas, the investors' responses to the pitches, and ultimately reveal whether any investments were offered in response to the business pitches.

34.     Mrs. Klein's description of the column further informed defendant RECHY that Plaintiffs would receive a percentage of any deal made between the investor and presenter.

35.     Defendants agreed to Klein's proposed addition to his column, immediately recognizing that Klein's proposed column had the potential of increasing AMI's readership and subscription revenue by generating interest from potential business owners seeking to

6

pitch their ideas and from potential investors looking for investment opportunities which would, in turn, increase AMI's ad revenue and reputation as a business magazine.

36.    It was at this time that Klein's "Invest in Me" idea that was pitched and rejected by defendants in 2014, came to be called "BizTank." It was also at this time that the investors became known as Moguls.

37.    Prior to the first publication of Klein's "BizTank" article in Ami magazine, IMBC arranged for the purchase of the domain name www.biztankmoguls.com and began developing a website for the BizTank business.

38.    Defendants were in no way involved in creating any of the content that was used for Klein's column or in his business of matching moguls with entrepreneurs for the purpose of facilitating financing opportunities and/or fostering business partnerships.

39.    Plaintiff Klein's new column was first published in AMI magazine on April 20, 2016.

40.    Plaintiffs expended significant financial resources, in an amount believed to exceed $500,000.00, to develop the BizTank business model of matching investors with entrepreneurs for the purpose of facilitating financing opportunities and/or fostering business partnerships, to secure the pitches presented at the events and used as the content for BizTank column, to develop and secure contacts and content necessary for producing the BizTank events, to organize the BizTank events under the "BizTank" mark, using banners, signs, and advertisements depicting the BizTank name and mark.

41.    These expenditures of skill, labor, and financial resources included personal financial investments for renting out high quality spaces for holding events attended by entrepreneurs and moguls, retaining a video production company to film the pitches and

perform post-production editing, advertising for the events and soliciting pitches from presenters seeking the opportunity to present their business ideas to possible moguls, reviewing and identifying presenters with solid business plans that would garner interest from moguls, and securing moguls willing to listen to pitches and possibly invest in a presenter's business.

42.    Plaintiffs organized events in the name of "BizTank" and BizTank logo used at the events, while referencing Ami Magazine, expressly states "Joel Klein, CPBC Presents" and that it is "Powered by IMBC Immediate Marketing & Business Consulting," which is my consulting business and incorporates the IMBC company logo.  The reference to Ami Magazine in the logo was merely because Ami was the media outlet used for publishing the articles about the BizTank events. However, Klein and IMBC personally paid all expenses related to securing the event space and all furniture and equipment rentals.

43.    All presenters seeking to pitch to moguls at the BizTank events had to sign contracts with BizTank, complete applications describing the business idea, the stage of their business, and giving Plaintiff BizTank the right to utilize their pitch and negotiations with the moguls as part of BizTank's written or visual content.  In addition, the applications contained a provision by which the presenters agreed that BizTank would be entitled to a Finder's Fee if an investment offer was made as a result of the presenter's participation in a BizTank event.

44.    Plaintiffs prepared and circulated the agreements.  Defendants were not a party to any of the agreement or involved in the preparation of the agreements.

8

45. The Finder's Fee agreement was between the Presenter and BizTank, and each presenter signed one. Plaintiff Klein is identified as the President of BizTank in all the agreements and signed the agreements on behalf of BizTank.

46. Defendants were always aware of the personal and financial resources that Plaintiffs were investing in BizTank and at no time claimed that they had any ownership interest in the BizTank corporation or the BizTank concept.

47. To ensure the success of BizTank, Plaintiffs incurred the expense of hiring a public relations company called 5WPR, which succeeded in publicizing Plaintiffs efforts in connecting entrepreneurs and investors within the Hasidic Orthodox Community to mainstream media outlets.

48. As a result of the efforts of Plaintiffs' PR company, the New York Daily News published an article on April 4, 2017, http://www.nydailynews.com/entertainment/brooklyn-version-shark-tank-helps-aspiring-entrepreneurs-article-1.3018817, discussing BizTank and referring to it as the "Brooklyn version of Shark Tank." The article recognizes Klein as the producer of BizTank, and mentions that the BizTank weekly series appears in AMI Magazine.

49. After the Daily News article, Defendants began showing more interest in BizTank. However, they never attended any BizTank event or contributed any money towards the cost of the events.

50. On April 20, 2017, Plaintiffs retained an attorney to file a trademark registration for BizTank with the United States Trademark and Patent Office and Registration Number 87419303 was assigned ("BizTank Trademark"). The application

9

was amended to reflect April 12, 2016, as the first date the mark was used in commerce by Plaintiffs. This application is still pending.

51. On May 25, 2017, another article was written about BizTank in JTA (Jewish Telegraph Agency) that acts like a Jewish Associated Press, producing and providing news stories to over 20 publications. The article was entitled "There's an Orthodox version of 'Shark Tank'" by Ben Sales. The article references Joel Klein as the creator of BizTank and discusses the more than 30 startup pitches that have been presented through BizTank. It also states that investments from BizTank introduced moguls in the various pitches have totaled $4 million dollars.

52. Pursuant to Plaintiffs' Finder's Fee Agreements with the participants Plaintiffs were entitled to receive approximately 4.5% of such investments.

53. Another story about BizTank was published on May 29, 2017 in the Algemeiner, "Investing in Jewish Businesses and BizTank," as part of a blog written by a mogul that had participated in BizTank. It credited Plaintiff Klein as the creator and producer of BizTank.

54. After seeing all the publicity BizTank was generating and that Plaintiff Klein was being credited as the creator and founder of BizTank, Defendants began to falsely claim an ownership interest in BizTank.

55. Defendants' claims were completely false. Defendants had not been involved in any aspect of running BizTank. Their sole involvement was in publishing the articles that they obtained for free from plaintiff Klein about BizTank events.

56. Defendants began threatening Plaintiffs to try to force them to agree to partner with them in BizTank.

10

Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 13 of 48 PageID #: 19

57.     As a result, Plaintiffs retained an attorney to help them protect their rights. Their attorney sent Defendants a cease and desist letter on June 2, 2017, which Defendants ignored.

58.     Plaintiffs also sent an email letter to the moguls participating in BizTank, informing them that Plaintiffs BizTank and IMBC were no longer using defendant AMI as their media outlet.

59.     After receiving Plaintiffs' counsel's cease and desist letter, Defendants sent BizTank's Moguls an email claiming that IMBC, plaintiff Klein and his wife Leah Klein were no longer involved in BizTank.

60.     Ronn Torrosian, one of the moguls who had participated in BizTank had planned on investing along with another, between $500K to $1Million in the business of BizTank, but has withheld his investment due to Defendants' false claims of having an ownership stake in BizTank.

61.     An event was held by BizTank on May 22, 2017, resulting in the videotaping of six pitches.

62.     After the dispute arose between Plaintiffs and Defendants, upon information and belief, Defendants YITZCHOK and RECHY directed AMI employee Gitty Chein to contact the videographer hired by Plaintiffs to videotape the pitches at BizTank events, and request copies of the videos under false pretenses.

63.     The videographer mistakenly released the videos that were owned by Plaintiffs to Ms. Chein, believing Ms. Chein had their permission to request the videos.

64.     After the videographer learned that Plaintiffs were no longer using AMI as their media outlet and that Defendants had wrongfully obtained the release of the videos,

11

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 14 of 48 PageID #: 20 RECEIVED NYSCEF: 10/24/2017

the videographer sent Defendants a notice informing them that they have no legal rights to use the video files because they are the property of plaintiff Klein, and then had his attorney send a follow-up Cease and Desist letter.

65. Utilizing the wrongfully converted videos, Defendants attempted to recreate the BizTank articles that plaintiff Klein contributed for publication in AMI, passing them off as if plaintiff Klein had prepared the articles. These articles were inferior in quality and damaging to Plaintiffs' reputation and business.

66. In subsequent issues, Defendants continued running Plaintiff Klein's BizTank column using the content from the stolen videos, only now they were published under the name of Dovid Lapinsky.

67. Defendants were not a party to the agreement between BizTank and the presenters and had no legal right to publish the "BizTank" series of articles based on the stolen content.

68. Defendants' publications were much lower in caliber of quality and content, included inaccurate information, and divulged the presenters' confidential and proprietary information.

69. As a result of Defendants' conduct, Plaintiffs' professional reputation was tarnished and they were put at risk of losing all the goodwill that Plaintiff Klein had amassed during his years as a business coach and marketing consultant.

70. In fact, one presenter was so furious about the content published by AMI under Klein's name that it threatened to sue Plaintiffs and then ended its involvement with BizTank, depriving Plaintiffs of the Finder's fee they otherwise would have been entitled to receive.

12

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 11 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 15 of 48 PageID #: 21 RECEIVED NYSCEF: 10/24/2017

71.     To further tarnish Plaintiff Klein and IMBCs' reputation and their standing
in the Orthodox business community, Defendants summoned Plaintiff Klein and his wife,
Leah Klein to rabbinical court, procured an ex parte admonishment from the Rabbinical
Court (which in the Orthodox community is referred to as an injunction) against
Plaintiffs, and sent copies of the summons to all the moguls participating in BizTank,
falsely claiming that Plaintiffs had defrauded them and made false representations to
federal agencies.

72.     Also, in an effort to prevent Klein from continuing to publish his BizTank
columns, Ami sent a copy of the rabbinical court admonishment to Mishpacha magazine,
Ami's only competitor, threatening them not to publish Klein's BizTank column.

73.     As a result, Plaintiffs commenced their own business magazine, named
"B-Tank," as a media outlet for publication of Klein's BizTank columns.

74.     Meanwhile, on June 19, 2017, Defendants purported to trademark
Plaintiffs business platform and register "BizTank" under the name of Mehulol
Publications LLC d/b/a Ami Magazine.  Defendants purported registration was filed after
Plaintiffs' trademark application and has been rejected.

75.     Defendants' actions demonstrate their bad faith conduct and show that
they never had any intention of attempting to resolve their dispute with Plaintiffs through
rabbinical arbitration-- the traditional method followed within the orthodox community,
but, instead used it as a ploy to stall Plaintiffs in taking legal action, while Defendants
continued to exploit Plaintiffs' work, continued publishing BizTank content in their
magazine, and solicited other partners to invest in and develop a competing version of

13

Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 16 of 48 PageID #: 22

BizTank, through the unlawful use of Plaintiff's corporate name, and at the exclusion and to the detriment of Plaintiffs.

76.     As the creators of the content, Plaintiffs own the copyright in all the content produced under the BizTank name and business platform.

77.     Despite this, Defendants went so far as the to post a 12-minute version of one of Plaintiffs' videotaped pitches on AMI's YouTube page, without any legal right to do so and without the consent of the featured presenter.

78.     Defendants' actions further damaged Plaintiffs' reputation and their business relationships with existing presenters and hindered their ability to secure future presenters and moguls, who feared their proprietary information would not be kept confidential.

79.     By letter dated July 14, 2017, Plaintiffs' trademark counsel sent Defendants' counsel a letter outlining Plaintiffs' superior rights to the BizTank trademark, its ownership of the concept that led to the creation of BizTank's business platform, and advising Defendants that their unauthorized and continued use of Plaintiffs stolen content constitutes trademark and copyright infringement, tortious interference with business relations, and they were causing damage to Plaintiffs' business reputation, goodwill, and standing in the community.

80.     In response to the July 14, 2017 letter, Defendants proposed settlement discussions, which are believed to have been made as a further attempt to stall Plaintiffs from bringing this action while Defendants continued to take steps to steal the BizTank concept for themselves.

14

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM          INDEX NO. 520607/2017

NYSCEF DOC. NO. 1   Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 17 of 48 PageID #: 23   RECEIVED NYSCEF: 10/24/2017

81. No meaningful settlement discussions occurred and Defendants continued to refuse to participate in the rabbinical proceedings they initiated.

82. During this period, media coverage for BizTank continued to grow, with stories about BizTank appearing on PIX11, NY Post, News12, and other media outlets, all due to Plaintiffs' efforts and the success of the BizTank events exclusively organized and financed by Plaintiffs

83. Despite requests by Plaintiffs that AMI stop publishing their stolen content and stop running Plaintiff Klein's BizTank column, Defendants not only continued running the column but doctored the BizTank logo to remove the "Powered by IMBC Immediate Marketing & Business Consulting" language from the logo and any references to Klein, and began running advertisements for a new version of BizTank, soliciting presenters and moguls.

84. Around July 23, 2017, Plaintiff Klein was contacted by an individual named Asher Weinberger, whom Defendants had tried to hire to run their version of BizTank, falsely claiming they "fired Joel Klein because he wasn't doing a good job."

85. Upon information and belief, Defendants did not want to pay Mr. Weinberger for running their new BizTank or invest any money in the BizTank business. Instead, they wanted him to incur all business-related expenses and take a percentage from the investments generated through the business, which they represented to be $4 Million dollars.

86. In response to inquiries from Mr. Weinberger for documentation about the $4 Million dollar in investments generated by Ami, they were unable to provide any.

15

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM          INDEX NO. 520607/2017

NYSCEF DOC. NO. 1  Case 1:17-cv-06869-CBA-SMG  Document 1-1  Filed 11/22/17  Page 18 of 48 PageID #: 24          RECEIVED NYSCEF: 10/24/2017

87.     After Defendants exploited the pitches contained in the stolen videos by publishing their content in AMI magazine, they began running advertisements of a new BizTank in collaboration with Roth & Co., and omitted all references to IMBC and Klein. The logo design used the same unique "Powered by…." language in the original BizTank, only now it was "Powered by Roth & Co" instead of IMBC.  The advertisement also references the $4M investment funding that Plaintiffs generated through their BizTank business platform.

87.     The advertisements were in both print and video.  One video posted on September 18, 2017 on Ami's website, http://www.amimagazine.org/2017/09/18/biztank-need-money/, also uses images and excerpts of pitches from Plaintiffs' BizTank events, which they stole from Plaintiffs' videographer, and include the images and voices of the presenters and investors Plaintiffs secured for the events, which they have no legal right to use.

88.     Defendants' are attempting to ride on Klein's business reputation and BizTank's success, to solicit new pitches and moguls by confusing the public into thinking that AMI and Roth & Co.'s version of BizTank is associated with Plaintiffs and the original BizTank.

89.     Defendants have continued their infringing conduct by carrying out a social media campaign on twitter and YouTube for BizTank, introducing new moguls and soliciting pitches based on Plaintiffs' efforts and the goodwill they generated, causing confusion in the public as to the ownership of BizTank.

16

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM          INDEX NO. 520607/2017

NYSCEF DOC. NO. 1   Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 19 of 48 PageID #: 25   RECEIVED NYSCEF: 10/24/2017

90.     In addition, Plaintiffs learned that in September, Defendants, set up a BizTank booth at the LTB tradeshow, copying Plaintiffs' BizTank logo and causing actual confusion among the public in to thinking that it was Plaintiffs' BizTank booth.

91.     Plaintiff Klein learned about Defendants' BizTank booth after separate messages from two individuals, David Mizrachi and Tzvi Wagschal, congratulating plaintiff on setting up a BizTank booth at the event.

92.     More recently, Defendants have stolen and altered one of Plaintiffs' Biztank ads and posted it on the news site, https://www.vosizneias.com, on or about October 9, 2017, with a message stating: "Do you need money to launch or grow your business." If anyone clicked on the ad, it would redirect people to AMI magazine's website.

93.     When Ms. Klein contacted the news site to find out who placed the advertisement, she was told to contact "Zach" at Ami magazine.

94.     In addition, they have added a link on Ami magazine's website's home page (http://www.amimagazine.org/) soliciting pitches for BizTank.

95.     Defendants have ramped up their efforts to steal BizTank from Plaintiffs, however, they cannot show any involvement or investment in BizTank or in financing the cost of production for the events that generated the content of the articles contributed by Klein for publication in AMI magazine, which established the BizTank name and reputation in the minds of the public.

96.     Feeling restricted by the summons and admonishment procured by Defendants from a Rabbinical Court, Plaintiffs sought rabbinical court permission to assert their rights in secular court.

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM          INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 20 of 48 PageID #: 26   RECEIVED NYSCEF: 10/24/2017

97.     After receiving permission to proceed to secular court, they retained

litigation counsel to commence an action against Defendants and protect their valuable

rights in the BizTank trademark and business platform, which they have devoted years

and significant resources in creating.

### AS AND FOR A FIRST CAUSE OF ACTION FOR
### MISAPPROPRIATION OF SKILLS, LABOR, AND EXPENDITURES

98.     Plaintiffs repeat and reiterate the allegations contained in paragraphs "1"

through "97" as though fully set forth herein.

99.     Plaintiffs took steps to maintain all aspects of their business platform

connecting entrepreneurs to moguls and operated under the BizTank trademark

confidential. As early as 2014, when Plaintiffs first approached defendants with the "Invest

in Me" idea, which culminated in the creation of the business platform operated under the

BizTank name and mark, Plaintiffs circulated a non-disclosure agreement with the

proposal.

100.     During the next two years, Plaintiffs worked diligently to bring their "Invest

in Me" concept into fruition leading to the formation of BizTank and expended significant

labor and financial resources.

101.     Defendants' only involvement in BizTank was to publish the articles based

on BizTank events produced by Plaintiffs, which plaintiff Klein contributed for free to AMI

magazine for publication.

102.     That as the media outlet publishing Klein's BizTank related articles,

Defendants had gained access to Plaintiffs' confidential and proprietary information, such

as the identity of the moguls secured **by** Plaintiffs to invest in business opportunities

18

presented at BizTank and how to go about acquiring the videotaped recordings of business pitches presented at BizTank events.

103.    That all rights in the video files and information contained thereon and for the use of such materials were and remain the exclusive property of Plaintiffs pursuant to the agreements entered into between Plaintiffs and the presenters and Plaintiffs' agreements with the video production company.

104.    All marketing and advertising for BizTank events and all presenters and moguls participating and/or attending the events were secured by Plaintiffs.

105.    Identifying, establishing a relationship, and securing the participation of moguls looking to invest in business opportunities presented at BizTank events constitutes a valuable company asset and proprietary information belonging to Plaintiffs.

106.    Previously, Defendants, as Plaintiffs' media outlet, was provided access to the video files of BizTank events for purposes of arranging for the transcription of the file. However, Defendants were not authorized to use or publish any content. It was only to facilitate the Plaintiffs' work in creating the article for publication in AMI magazine.

107.    The business platform of facilitating connections between entrepreneurs and prospective investors through a "shark-tank" like format was created, funded, and controlled by plaintiff Klein, and commercially operated under the BizTank trademark.

108.    As soon as Klein's BizTank business platform, operated under the BizTank name and mark, began generating media attention from main stream publications such as the Daily News, New York Post, JTA, and other publications, Defendants sought to take the BizTank business platform for themselves.

19

109.    After Plaintiffs terminated Defendants as their media outlet for publishing articles about BizTank events, Defendants misappropriated the video files and content of the BizTank May 22, 2017 event, which was organized and funded by Plaintiffs.

110.    The information and content contained in the video files, and all information related to Plaintiff's BizTank business platform was the result of Plaintiffs Klein and IMBC's labor, skill, and expenditures, in which they have a protectable property interest.

111.    Defendants utilized the misappropriated video files and content to continue publishing articles in AMI magazine under Plaintiffs' BizTank mark, and falsely attributing the articles to Klein.

112.    Defendants misappropriation of the video files, content, and information related to Plaintiff's BizTank business platform, was done in bad faith and in an attempt to misappropriate a commercial advantage belonging to Plaintiffs in and to the BizTank name, logo, business platform, reputation, and goodwill.

113.    Defendants' misappropriation of Plaintiffs' labor, skill, and expenditures was for their benefit so that they could establish a competing business platform under the same name and gain a commercial advantage belonging to Plaintiffs.

114.    Defendants' misappropriation of Plaintiffs' labor, skill, and expenditures has also resulted in a diversion of business opportunities from Plaintiffs to the benefit of Defendants' competing business.

115.    Defendants gained an unfair commercial advantage from using the labor, skill, and expenditures of Plaintiffs' and the goodwill and recognition derived solely from their efforts for the benefit of Defendants' competing business.

116.   Defendants conduct described above was intentional, willful, and made in bad faith for the purpose of benefiting Defendants' competing business and driving Plaintiffs' out of business.

117.   Plaintiffs are and will continue to be irreparably damaged and injured in their business by Defendants' bad faith misappropriation of Plaintiffs' labor, skill, and expenditures that led to the creation of Plaintiffs' business platform for connecting entrepreneurs and investors under the BizTank name, warranting injunctive relief.

118.   In addition, and as a direct and proximate result of the actions of Defendants, Plaintiffs have also suffered monetary damages in an amount yet to be determined.

### AS AND FOR A SECOND CAUSE OF ACTION FOR
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

119.   Plaintiffs repeat and reiterate the allegations contained in paragraphs "1" through "118" as though fully set forth herein.

120.   All presenters seeking to pitch to moguls at BizTank events had to sign contracts with BizTank giving Plaintiff BizTank the right to utilize their pitch and negotiations with the moguls as part of BizTank's written or visual content and agreeing that BizTank would be entitled to a Finder's Fee of a percentage of any investment offer made as a result of the presenter's participation in a BizTank event, memorialized in a Finder's Fee Agreement.

121.   In addition, Plaintiffs had a verbal agreement with the moguls that participated in their BizTank events, wherein the moguls agreed to attend BizTank events, listen to and consider investing in business opportunities pitched by BizTank's presenters,

21

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM    INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG  Document 1-1  Filed 11/22/17  Page 24 of 48 PageID #: 30  RECEIVED NYSCEF: 10/24/2017

give Plaintiffs the right to film them at BizTank events and to use the videos from the events in written and visual content under the BizTank mark.

122.    That pursuant to the contractual business relationships between Plaintiffs and the presenters and moguls participating in BizTank events, Plaintiffs projected revenue based on 4.5% of the investment amount that Plaintiffs would be entitled to recover as a Finder's Fee is approximately $200,000.00.

123.    That pursuant to the contractual business relationships between Plaintiffs and the presenters and moguls participating in BizTank events, Plaintiffs were able to produce the BizTank events,  generate publicity in their events in order to maintain the network of entrepreneurs and moguls necessary for operating their business platform, attract new entrepreneurs and moguls to participate in their events and provide content for BizTank articles, all of which are if immeasurable value in cementing Plaintiffs Klein and IMBC's reputation and standing as a professional business coach and effective marketing and consulting business.

124.    That Defendants knew of the contractual business relationship that existed between Plaintiffs and the presenters and moguls participating in BizTank events, and the significant tangible and intangible value of those relationships to Plaintiffs.

125.    That Defendants knew that the continued operation of Plaintiffs' business platform operated under the BizTank name was contingent on Plaintiffs being able to sustain their business relationship with presenters and moguls willing to participate in BizTank events.

126.    That Defendants, in utilizing the wrongfully converted videos and fabricating BizTank articles from the stolen content and passing them off as if plaintiff

22

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM        INDEX NO. 520607/2017

NYSCEF DOC. NO. 1   Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 25 of 48 PageID #: 31   RECEIVED NYSCEF: 10/24/2017

Klein had prepared the articles, published proprietary and confidential information of at least one presenter, causing the presenter to cease all contact with BizTank and end its involvement in BizTank, depriving Plaintiffs of the 4.5% Finder's Fee they otherwise would have been entitled to receive.

127.    That Defendants, in utilizing the wrongfully converted videos and the presenters' voices and images in advertisements for Ami and Roth & Co's version of BizTank, creating liability risks for BizTank based on the agreements entered into with the presenters.

128.    That when the dispute over ownership of the BizTank trademark and the right to continue its operations arose, Defendants, in an attempt to tarnish Plaintiffs' reputation and their standing in the Orthodox business community, summoned Plaintiff Klein and his wife to rabbinical court, procured an ex parte admonishment against them and sent copies of the Rabbinical Court summons to all the moguls whom Klein had secured to participate in BizTank events along with an email accusing Klein and his wife of defrauding them and of making false representations to federal agencies.

129.    That upon information and belief, Defendants knew or had reason to know prior to committing the acts described above, that their conduct would induce the presenters to terminate their agreements with plaintiff BizTank and would induce the moguls to end their involvement with Plaintiffs' BizTank events.

130.    That Defendants' acts as described above constitute wrongful interference with the contractual relations of Plaintiffs with the presenters and moguls.

131.    By reasons of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which is not less than $292,500.00.

23

AS AND FOR A THIRD CAUSE OF ACTION FOR
TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

132.    Plaintiffs repeat and reiterate the allegations contained in paragraphs "1"
through "131" as though fully set forth herein.

133.    That Defendants at all times knew of Plaintiffs business relationships with
the presenters and moguls participating in BizTank events and that the relationships were
continuous and on-going and expected to grow in conjunction with the growth of
BizTank's business platform, increased media attention, and the increasing number of
BizTank events Plaintiffs intended to produce with the participation of the moguls and
presenters.

134.    Notwithstanding, Defendants launched a campaign to steal BizTank from
Plaintiffs by sending BizTank's Moguls an email on June 2, 2017 claiming that Klein, his
wife and IMBC were no longer involved in BizTank.

135.    As a result of Defendants' claims of false ownership, Ronn Torossian, one
of the moguls who had participated in BizTank and had committed to investing along
with another, between $500K to $1Million in the business of BizTank, was induced to
withdrew his investment until the ownership dispute is resolved.

136.    Defendants, without any viable legal claim and without any intention of
pursuing rabbinical court proceedings, summoned Klein and his wife to rabbinical court,
and procured an ex parte admonishment from the rabbinical court (which in the Orthodox
community is referred to as an injunction) against Plaintiffs, and sent copies of the
summons to all the moguls participating in BizTank, falsely claiming that Klein and his
wife had defrauded them and made false representations to federal agencies.

24

137.     Additionally, Defendants' actions, in utilizing the wrongfully converted videos to publish proprietary and confidential information of at least one presenter, inducing the presenter to terminate any future involvement with Plaintiffs.

138     That Defendants' actions in utilizing the wrongfully converted videos, in summoning Defendants to rabbinical court based on a fabricated claim of ownership rights in BizTank and in the BizTank business platform without any intent to pursue rabbinical arbitration but only as a means to tarnish Plaintiffs' reputation and their standing in the Orthodox business community, and by sending emails to the Moguls accusing Plaintiff Klein of fraud, were acts all committed with the intention of interfering and preventing continued business relations between Plaintiffs, the presenters and moguls.

139.     That Defendants committed the aforementioned acts with malice and the intent to damage Plaintiffs reputation in the Orthodox business community and drive them out of business, knowing that without presenters and moguls willing to participate in Plaintiffs' BizTank events or invest in the business, Plaintiffs would be unable to operate the business platform they worked so hard to develop, making it easier for Defendants to steal and operate a competing BizTank business.

140.     That, upon information and belief, Defendants admitted to third-parties that their actions were intended to "crush" Plaintiffs.

141.     That as a result of Defendants' actions, Plaintiffs have had a difficult time securing presenters with quality business ideas and/or moguls with the means to invest in new businesses participating in BizTank events, of the same caliber they had worked so hard to secure until Defendants' malicious interference.

25

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 28 of 48 PageID #: 34 RECEIVED NYSCEF: 10/24/2017

142.     That Defendants' acts, as described above, constitute wrongful interference with prospective contractual relations between Plaintiffs and the presenters and moguls they had secured to participate in BizTank events on a continuous basis.

143.     By reasons of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which is not less than $500,000.00.

AS AND FOR A FOURTH CAUSE OF ACTION FOR<br>INTERFERENCE WITH PROSPECTIVE COMMERCIAL ADVANTAGE AND<br>UNFAIR COMPETITION

144.     Plaintiffs repeat and reiterate the allegations contained in paragraphs "1" through "143" as though fully set forth herein.

145.     That Defendants' actions in misappropriating Plaintiffs' property rights in the video tape files they stole and used to produce content and publish it in AMI magazine after Plaintiffs had terminated them as their media outlet, passing off such content as being prepared by "Dovid Lapinsky" and omitting Plaintiffs IMBC and Klein's ownership interest in the materials, and utilizing a doctored BizTank logo, constitutes unfair competition and unfair practices.

146.     The Defendants' fraudulent acts amounted to an unjustifiable interference and encroachment on the commercial prospective advantage that were represented by the Plaintiffs' vested property rights.

147.     These unauthorized acts of misappropriation constitute unfair competition that has caused monetary damage based on the misappropriation of property in an amount to be determined at trial, and non-compensable injury to Plaintiffs' goodwill and reputation requiring injunctive relief.

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM        INDEX NO. 520607/2017

NYSCEF DOC. NO. 1   Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 29 of 48 PageID #: 35   RECEIVED NYSCEF: 10/24/2017

AS AND FOR A FIFTH CAUSE OF ACTION FOR
LIBEL AS AGAINST DEFENDANTS
YITZCHOK FRANKFURTER AND RECHY FRANKFURTER

148.    Plaintiffs repeat and reiterate the allegations contained in paragraphs "1"

through "147" as though fully set forth herein.

149.    That in emails dated June 8, 2017 sent to Mr. Verschleiser, June 11, 2017

to Mr. Margules and to Mr. Rappaport, and June 12, 2017 to Mr. Rock and Mr. Pinkesz,

all of whom are Moguls secured by plaintiff Klein, through his IMBC business, to

participate in BizTank events, Defendants published false and libelous statements about

plaintiff Klein and his wife Leah Klein.

150.    That in the aforesaid emails, which are nearly identical in content,

Defendants tell the moguls that they have secured an injunction (admonishment) from the

Beth Din of Boro Park against the Kleins in regard to BizTank, accuse Plaintiff Klein and

his wife of attempting to defraud Defendants and of engaging in "fraud and

misstatements to federal agencies at issue here."

151.    That, upon information and belief, at the time of making the defamatory

statements, the Defendants were actuated by actual malice in that they knew the contents

of the statements were false and untrue.

152.    That, as a result of Defendants' defamatory statements, Plaintiff Klein has

been irreparably injured in his good name, business reputation in operating Plaintiffs

IMBC and BizTank, and social standing, and has lost the esteem and respect of his

friends, acquaintances, and business associates.

153.    That the libelous statements made by Defendants were stigmatizing and

damaging to Plaintiff Klein's character and business reputation and are defamatory per se.

27

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 30 of 48 PageID #: 30 RECEIVED NYSCEF: 10/24/2017

154.    That by reason of the foregoing, damages are presumed by statute due to the harm caused to plaintiff Klein's business reputation and specific damages will be determined at trial.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## SLANDER AS AGAINST DEFENDANTS
## YITZCHOK FRANKFURTER AND RECHY FRANKFURTER

155.    Plaintiffs repeat and reiterate the allegations contained in paragraphs "1" through "154" as though fully set forth herein.

156.    That as part of Defendants' efforts to usurp Plaintiffs' BizTank business platform for themselves by publishing their stolen content and continuing to run Plaintiff Klein's BizTank column but removing all references to Klein and IMBC in the BizTank logo it published, Defendants sought to hire an individual named Asher Weinberger, to run their version of BizTank.

157.    That, upon information and belief, on or about July 23, 2017, in discussing their reasons for hiring someone to run their version of BizTank, Defendants maliciously spoke of and concerning Plaintiff Klein and his business and trade, stating that they "fired Joel Klein because he wasn't doing a good job."

158.    That Defendants' spoken statements were false and defamatory, known to Defendants, at the time they were made, to be false and defamatory, and were spoken willfully and maliciously with the intent to damage Plaintiff Klein's good name, business reputation, and social standing.

159.    That the slanderous statements made by Defendants were stigmatizing and damaging to Plaintiff Klein's character and business reputation.

160.    That the statements were made with reckless disregard for the facts.

28

161.   The slanderous statements made by Defendants were stigmatizing and damaging to plaintiff Klein's character and business reputation and are defamatory per se.

162.   That by reason of the foregoing, damages are presumed by statute due to the harm caused to plaintiff Klein's business reputation and specific damages will be determined at trial.

### AS AND FOR A SEVENTH CAUSE OF ACTION AS AGAINST DEFENDANTS YITZCHOK FRANKFURTER AND RECHY FRANKFURTER FOR INJURIOUS FALSEHOOD

163.   Plaintiffs repeat and reiterate the allegations contained in paragraphs "1" through "162" as though fully set forth herein.

164.   That Defendants' actions in circulating the emails to the Moguls secured by Plaintiffs to participate in their BizTank events, containing knowingly false information accusing Plaintiff Klein and his wife Leah Klein of attempting to defraud Defendants and of engaging in "fraud and misstatements to federal agencies" were motivated by malicious intent to harm Klein, IMBC, their BizTank business platform, and to damage Klein's personal and professional reputation.

165.   That as a result of Defendants' intentionally false statements, Plaintiff Klein has been irreparably injured in his good name, business reputation, and social standing, and has been caused to lose the esteem and respect of his friends, acquaintances, and business associates.

166.   That the libelous statements made by Defendants were stigmatizing and damaging to Plaintiffs Klein's character and business reputation and are defamatory per se.

167.   That by reason of the foregoing, Plaintiffs have suffered damages in an amount to be determined at trial but believed to exceed $500,000.00.

29

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1     Case 1:17-cv-06869-CBA-SMG    Document 1-1    Filed 11/22/17    Page 32 of 48 PageID #: 36    RECEIVED NYSCEF: 10/24/2017

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR
## A PRIMA FACIE TORT

168.     Plaintiffs repeat and reiterate the allegations contained in paragraphs "1" through "167" as though fully set forth herein.

169.     That upon information and belief Defendants' acts of disseminating falsehoods to the moguls and other members of the Orthodox community about Plaintiff Klein's character, business qualifications, and involvement in BizTank, when in fact Plaintiff Klein is the founder and creator of BizTank, were made with the sole purpose of destroying Plaintiffs' business platform of facilitating a connection between entrepreneurs and investors, operated under the BizTank mark.

170.     That Defendants knew or had reason to know that the loss of its business relationship with the moguls it had secured to participate in BizTank events would be detrimental to the continuation of Plaintiffs' business at the time they engaged in the aforementioned activity.

171.     That the acts described above constitute prima facie tort.

172.     By reasons of the foregoing, Plaintiffs have been damaged in an amount to be determined at trial, which is not less than $ 900,000.00.

## AS AND FOR A NINTH CAUSE OF ACTION
## TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125 (a)

173.     Plaintiffs repeats, realleges, and incorporates by reference Paragraphs "1" through "172" above as if fully set forth herein.

174.     On April 20, 2017, Plaintiffs retained an attorney to file a trademark registration for BizTank with the United States Trademark and Patent Office and

Registration Number 87419303 was assigned ("BizTank Trademark"). The application identifies plaintiff Klein as the owner of the mark.

175.    The trademark application was thereafter amended to reflect April 12, 2016, as the first date the mark was used in commerce by Plaintiffs.

176.    That Plaintiff's trademark application is still pending.

177.    Subsequently, on June 19, 2017, Defendants purported to trademark Plaintiffs' business platform and register "BizTank" under the name of Mehulol Publications LLC d/b/a Ami Magazine.

178.    That Defendants' purported registration was filed after Klein's BizTank application.

179.    That, Klein has rights superior than defendant AMI in and to the BizTank name and trademark, even though his application is still pending.

180.    That through Plaintiffs' hard work and extensive marketing, their business platform operating under the BizTank name and mark was featured on numerous news shows and publications such as the New York Daily News, JTA (who had the article published in over 20 media outlets), The Algemiener, PIX11, NY Post, and News12, discussing BizTank and referring to it as the "Brooklyn version of Shark Tank," and recognizing Plaintiff Klein as the creator of BizTank and producer of BizTank events.

181.    The increased recognition of the BizTank name and mark through continued media coverage were all due to Plaintiffs' efforts and the success of the BizTank events exclusively organized and financed by Plaintiffs

31

182.    Since Plaintiffs began using the trademark "BizTank", Klein has continuously used and extensively marketed his trademark. As a result of his success and publicity, the "BizTank" mark has acquired significant recognition among entrepreneurs, business investors, and the general public, all of whom have come to associate the "BizTank" name and mark with Plaintiff Klein and his business platform of facilitating connections between entrepreneurs and investors within the Orthodox community in a "shark tank" like format.

183.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

> Any person who, on or in connection with any goods or services…, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person… shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

184.    Defendants, by their unauthorized appropriation and use of Plaintiff's trade name and mark "BizTank," through their use of a nearly identical doctored BizTank mark to advertise in their AMI magazine and on social media, an almost identical business platform, have used a "false designation of origin" and are engaged, and continue to engage, in acts of wrongful deception of consumers, wrongful designation as to the source and sponsorship of goods in violation of Section 43(a) of the Lanham Act, 15 U.S.C.§ 1125(a).

185.    Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or

32

misleadingly describe and or represent Defendants' products and services, and constitute a wrongful deprivation of Plaintiffs' good name and reputation, and the wrongful deprivation of plaintiff's right to public recognition and credit as the true source of the "BizTank" moniker, which has been continuously used by Plaintiff since April 12, 2016

186.    Defendants' acts as described above, are likely to cause confusion, mistake and/or deception as to the source, sponsorship, affiliation or approval of Defendants' goods and services.  Further, Defendants' acts described above constitute false representation of fact that are also likely to cause confusion, mistake, and/or deception as to the source, sponsorship, affiliation, or approval of Defendants' goods and services.

187.    Defendant's unauthorized use of Plaintiff Klein's "BizTank" trade name and mark has damaged Plaintiffs and their business and goodwill symbolized by the name "BizTank".

188.    As a consequence of Defendants' unauthorized use of the trade name and mark "BizTank", Plaintiffs are entitled to an injunction as set forth below, and order of destruction of all Defendants' infringing materials and products, Defendants' profits generated through the unauthorized use of the BizTank trade name and mark, and Plaintiff's damages and costs of this action.

AS AND FOR A TENTH CAUSE OF ACTION
TRADEMARK DILUTION IN VIOLATION OF
NEW YORK GENERAL BUSINESS LAW
(N.Y. GEN. BUS. LAW § 360-1)

189.    Plaintiff repeats, realleges, and incorporates by reference Paragraphs "1" through "188" above as if fully set forth herein.

190.    New York General Business Law, Section 360-l provides that:

33

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

191.    Plaintiff Klein is the exclusive owner of the "BizTank" name and mark.

192.    Through prominent, public, long, and continued use in commerce, particularly in New York, Plaintiff Klein's "BizTank" name and mark has become, and continues to become famous and distinctive.

193.    After Plaintiff Klein's continued use of the "BizTank" trademark and substantial investment in developing value, goodwill, fame and recognition associated with the mark, Defendants, without authorization from Plaintiff began using the trade name and mark in commerce.

194.    Defendants' unauthorized use of Plaintiff Klein's "BizTank" trade name and mark, dilutes and/or is likely to dilute the distinctive quality of the mark and to lessen the capacity of such mark to identify and distinguish Plaintiff's goods and services.

195.    Defendants' unlawful use of Plaintiff's "BizTank" trade name and mark, in connection with inferior products/services, such as the inferior content that was published by Defendants utilizing the video files they stole from Plaintiffs, is also likely to tarnish the trademark and cause blurring in the minds of consumers between Plaintiff and Defendants, thereby lessening the value of Plaintiff Klein's mark, as a unique identifier of Plaintiff's business platform and related services/products.

196.    By the acts described above, Defendants have diluted, and are likely to dilute the distinctiveness of Plaintiff's trade name and mark, and cause a likelihood of

34

harm to Plaintiff's business reputation in violation of Section 360–l of the New York

General Business Law.

197.    Defendants' acts have caused, and will continue to cause, irreparable

injury to Plaintiff. Plaintiff has no adequate remedy at law and is thus damaged in an

amount not yet determined.

<u>AS AND FOR AN ELEVENTH CAUSE OF ACTION</u>
<u>DECEPTIVE ACTS AND PRACTICES UNLAWFUL IN VIOLATION OF</u>
<u>NEW YORK GENERAL BUSINESS LAW (N.Y. GEN. BUS. LAW §§ 349 AND 350)</u>

198.    Plaintiff repeats, realleges, and incorporates by reference Paragraphs "1"

through "197" above as if fully set forth herein.

199.    New York General Business Law, Section 349 states, in relevant part, that:

"Deceptive acts or practices in the conduct of any business, trade or
commerce or in the furnishing of any service in this state are hereby
declared unlawful."

200.    New York General Business Law, Section 350 states, in relevant part,
that:

"False advertising in the conduct of any business, trade or commerce or in
the furnishing of any service in this state is hereby declared unlawful."

201.    Upon information and belief, Defendants stole and altered a legitimate

BizTank ad Plaintiffs had posted online that included the language "Powered by IMBC

Immediate Marketing & Business Consulting" to include the message "Do you need

money to launch or grow your business" and posted it on the news site,

https://www.vosizneias.com around October 9, 2017.  If anyone clicked on the ad, it

would redirect people to AMI magazine's website.

202.    Through their advertisement, distribution, offer to sell and sale of

unauthorized services bearing Plaintiff's "BizTank" trade name and mark, Defendants

35

have engaged in consumer-oriented conduct that has affected the public interest of New

York and has resulted in injury to consumers in New York.

203.    Defendants' deceptive acts or practices, as described herein, are materially

misleading. Such acts or practices have deceived or have a tendency to deceive a material

segment of the public to whom the Defendants have directed their marketing activities,

and Plaintiffs have been injured thereby.

204.    By the acts described above, the Defendants have willfully engaged in

deceptive acts or practices in the conduct of business and furnishing of services in

violation of Section 349 and 350 of the New York General Business Law.

205.    Defendants' acts have caused, and will continue to cause, irreparable

injury to Plaintiffs, warranting injunctive relief.

206.    Plaintiffs have no adequate remedy at law and are thus damaged in an

amount not yet determined.

### AS AND FOR A TWELFTH CAUSE OF ACTION TRADEMARK INFRINGEMENT IN VIOLATION OF NEW YORK STATE COMMON LAW

207.    Plaintiff repeats, realleges, and incorporates by reference Paragraphs "1"

through "206" above as if fully set forth herein.

208.    Plaintiff Klein owns all right, title and interest in and to the "BizTank"

name and trademark as described above, including all common law rights in the

"BizTank" trademark.

209.    Upon information and belief, Defendants' print, social media, and

YouTube advertisements for a business platform seeking to connect businesses with

36

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 39 of 48 PageID #: 45 RECEIVED NYSCEF: 10/24/2017

investors, similar to Plaintiffs' business platform, uses Plaintiff Klein's BizTank trademark with similar design

210.    Defendants' use of the "BizTank" mark is unauthorized, and is likely to cause consumer confusion.

211.    Defendants' use of the "BizTank" mark is unauthorized, and has caused actual consumer confusion.

212.    Plaintiffs learned that within the last two weeks, Defendants, set up a BizTank booth at the LTB tradeshow, copying Plaintiffs' BizTank logo.

213.    As a result of Defendants' BizTank booth, plaintiff Klein received separate messages from two individuals, David Mizrachi and Tzvi Wagschal, congratulating him on setting up a BizTank booth at the LTB event.

214.    As a result of Defendants' conduct, the public is likely to believe that Defendants' products originate or are associated with Plaintiff's BizTank business platform and events, and will reap the benefit of the goodwill associated with Plaintiff Klein's trademark.

215.     By the acts described above, Defendants have engaged in trademark infringement and unfair competition in violation of the common law of the State of New York.

216.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff Klein.

217.    Plaintiff Klein has no adequate remedy at law and is thus damaged in an amount not yet determined.

37

### AS AND FOR A THIRTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION IN VIOLATION OF
### NEW YORK STATE COMMON LAW

218.   Plaintiff repeats, realleges, and incorporates by reference Paragraphs "1" through "217" above as if fully set forth herein.

219.   By the acts described herein, Defendants have engaged in unlawful and unfair business practices that have injured and will continue to injure Plaintiffs in their business and property, in violation of New York Common Law.

220.   Defendants' acts herein have caused monetary damages to Plaintiffs in an amount to be proven at trial, and have caused, and will cause, irreparable injury to Plaintiffs and their business, reputation, and trademark, unless and until Defendants are permanently enjoined from using the "BizTank" mark and related materials, including the video footage from prior BizTank events and the content from Plaintiff Klein's prior BizTank columns, in commerce, on the AMI magazine website, and in any advertisements for AMI magazine.

221.   As a direct and proximate result of Defendants' conduct alleged herein, Defendants have been unjustly enriched and should be ordered to account for all profits earned as a result of the unlawful conduct and to disgorge all profits earned.

### AS AND FOR A FOURTEENTH CAUSE OF ACTION
### TO ENJOIN THE USE OF PLAINTIFF BIZTANK'S CORPORATE NAME

222.   Plaintiff repeats, realleges, and incorporates by reference Paragraphs "1" through "221" above as if fully set forth herein.

223.   Plaintiff BizTank was incorporated on July 12, 2016 by plaintiff Joel Klein being the sole shareholder.

38

224.    Prior to and following its incorporation, Plaintiffs have used the name
"BizTank" in the operation of the business platform created by plaintiff Klein, which
facilitates the connection between entrepreneurs seeking business investors and a network
of investors through a "shark-tank" like platform consisting of events produced by
Plaintiffs, at which vetted entrepreneurs make "pitches" to interested investors for the
purpose of securing financing in exchange for payment of a finder's fee on each
investment secured as a result of BizTank's efforts.

225.    Plaintiffs have expended substantial sums in advertising and promoting
the good will of their business and the good name of BizTank in connection with the
business platform created and funded by Plaintiffs.

226.    As a result of Plaintiffs' efforts, the name BizTank has become
synonymous with Klein and is held in high regard commensurate with Klein's established
reputation as a business coach and marketing consultant.

227.    Defendants are attempting to operate a business platform connecting
entrepreneurs and investors in direct competition with the business founded by Plaintiffs,
under the name "BizTank," and primarily directed to the same group of businesses and
investors within the closely-knit orthodox community residing mainly within New York
City, as part of its attempt to appropriate the good will and media attention generated by
Plaintiffs' business and efforts.

228.    That the aforesaid conduct by Defendants constitutes unfair competition
with Plaintiffs and a plain deceit upon the public and threatens to impair and cause severe
damage to the high reputation, good will, and profits of the Plaintiffs and their business

and will cause irreparable damage to Plaintiffs for which they have no adequate remedy at law.

229.    Plaintiffs have given no consent, express or implied, to Defendants for the use by the Defendants of the name "BizTank" in connection with any business, and have advised Defendants that their continued use of the name "BizTank" will result in Plaintiffs taking legal action.

230.    That by reason of the foregoing, Plaintiffs have been and now are, and unless the relief herein prayed for is granted, will be hereafter hindered, unlawfully interfered with by Defendants' wrongful use of Plaintiffs' corporate name, and irreparably injured by the resultant diversion of customers and good will Plaintiffs strove so hard to develop.

**WHEREFORE,** Plaintiffs BIZTANK, INC., IMMEDIATE MARKETING & BUSINESS CONSULTING, INC. and JOEL KLEIN demand judgment as follows:

I.    On the First Cause of Action, an injunction and monetary damages against Defendants in a sum to be determined at trial, together with interest, costs, and disbursements;

II.    On the Second Cause of Action, judgment against Defendants in a sum to be determined at trial, which is not less than $ 292,500.00, together with interest, costs, and disbursements;

III.    On the Third Cause of Action, judgment against Defendants in a sum to be determined at trial, which is not less than $ 180,000.00, together with interest, costs, and disbursements;

40

IV.     On the Fourth Cause of Action, , an injunction and monetary damages against Defendants in a sum to be determined at trial, together with interest, costs, and disbursements;

V.      On the Fifth Cause of Action, judgment against defendants YITZCHOK Frankfurter and RECHY Frankfurter in a sum to be determined at trial, together with interest, costs, and disbursements;

VI.     On the Sixth Cause of Action, judgment against defendants YITZCHOK Frankfurter and RECHY Frankfurter in a sum to be determined at trial, together with interest, costs, and disbursements;

VII.    On the Seventh Cause of Action, judgment against defendants YITZCHOK Frankfurter and RECHY Frankfurter in a sum to be determined at trial, which is not less than $500,000.00, together with interest, costs, and disbursements;

VIII.   On the Eighth Cause of Action, judgment against Defendants in a sum to be determined at trial, which is not less than $900,000.00, together with interest, costs, and disbursements;

IX.     On the Ninth, Tenth, Eleventh and Twelfth Causes of Action:

1.      A **FINAL JUDGMENT** that:

a. The Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

b. The Defendants have diluted the distinctiveness of Plaintiff's "BizTank" trademark, and caused injury to Plaintiff's business reputation in violation of Section 360-l of the New York General Business Law;

41

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG Document 1-1 Filed 11/22/17 Page 44 of 48 PageID #: 50 RECEIVED NYSCEF: 10/24/2017

c. The Defendants have engaged in deceptive acts and practices unlawful in violation of Sections 349 and 350 of the New York General Business Law;

d. The Defendants have engaged in trademark infringement in violation of the common law of the State of New York; and

e. That the above acts were done willfully, and/or intentionally.

2.      For entry of an **ORDER** permanently enjoining and restraining the Defendants, and their officers, agents, servants, employees and attorneys and all those in active concert or participation with any of them, from:

a. infringing in any manner the Plaintiff's trademark;

b. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of Plaintiff's trademark;

c. Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods, services, or business products as being those of Plaintiffs, or sponsored by or associated with Plaintiffs, and from offering such goods into commerce;

d. Further infringing the Plaintiff's trademark by producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products or services not authorized by Plaintiff that bear any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's "BizTank" trademark;

42

e. Using any simulation, reproduction, counterfeit, copy or colorable imitation Plaintiff's trademark, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized services, products or materials in such fashion as to relate or connect, or tend to relate or connect, such services and products in any way to Plaintiff, or to any goods or services sold, manufactured, sponsored or approved by, or connected with Plaintiff;

f. Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by the Defendants are in any manner associated or connected with Plaintiff, or are sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

g. Infringing Plaintiff's Trademark, or Plaintiff's rights therein, or using or exploiting Plaintiff's Trademark, or diluting the trademark;

h. Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

3.      For an entry of an **ORDER** directing that the Defendants deliver up for destruction to Plaintiff all unauthorized products, advertisements and materials in their possession or under their control bearing Plaintiff's Trademark, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

43

4.      For entry of an **ORDER** requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

5.      For all such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any services, products or associated materials manufactured, sold or otherwise circulated or promoted by the Defendants are authorized by Plaintiff or related in any way to Plaintiff's products.

6.      For an assessment of the ACTUAL DAMAGES suffered by Plaintiff trebled, and an award of all profits that Defendants have derived from using Plaintiff's Trademark, trebled, as well as costs and attorneys' fees to the full extent provided under the law.

X.      On the Thirteenth Cause of Action: a judgment and order compelling defendants to account to Plaintiffs any and all revenues and profits that Defendants have derived from their wrongful actions and for the disgorgement of all such ill-gotten revenue and profits.

XI.     On the Fourteenth Cause of Action: a judgment and order against all Defendants, that Defendants, their officers, servants, agents or employees be forever restrained and enjoined from using the name "BizTank" or any colorable imitation thereof in connection with their business activities, its advertising, or for any other purpose which may deceive or mislead the public as to the identity of the Defendants or their connection with Plaintiffs; that the Defendants, their officers, servants, agents or employees be forever restrained and enjoined from in any manner making representations which might lead the

44

FILED: KINGS COUNTY CLERK 10/24/2017 05:55 PM          INDEX NO. 520607/2017

NYSCEF DOC. NO. 1 Case 1:17-cv-06869-CBA-SMG   Document 1-1   Filed 11/22/17   Page 47 of 48 PageID #: 53   RECEIVED NYSCEF: 10/24/2017

public into the belief that the business being conducted by Defendants under the name of

"BizTank" is the business of Plaintiffs or is in any way affiliated or connected therewith.

      XII.    Granting to Plaintiffs such other and further relief as this Court deems just

and proper, including interest, attorney's fees, costs and disbursements.

Dated: New York, New York
       October 23, 2017

                      Yours, etc.

                      ALLYN & FORTUNA LLP

                      NICHOLAS FORTUNA, ESQ.
                      PAULA LOPEZ, ESQ.
                      Attorneys for Plaintiffs
                      1010 Avenue of the Americas, 3rd Floor
                      New York, New York 10018
                      (212) 213 - 8844

# ATTORNEY VERIFICATION

NICHOLAS FORTUNA, an attorney duly admitted to practice in the courts of the State of New York, affirms under the penalty of perjury the following:

1. I am a member of the law firm, Allyn & Fortuna LLP, the attorneys of record for the Plaintiffs BIZTANK, INC., IMMEDIATE MARKETING & BUSINESS CONSULTING, INC. a/k/a IMBC, and JOEL KLEIN.  I have read the annexed Verified Complaint and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon a review of my client's file, conversations with the client and relevant law.

2. I make this affirmation instead of the Petitioner, pursuant to C.P.L.R. §3020 (d)(3), because the Plaintiffs are in a county other than the one in which my firm maintains its offices.

Dated: New York, New York
   October 23, 2017

NICHOLAS FORTUNA